UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAMROCK REAL ESTATE PARTNERS, L.P. and HAMCASTLE US, L.P.,<br><br>                                       Plaintiffs,<br><br>  v.<br><br>DANIEL M. PALMIER,<br><br>                                       Defendant. | Case No. 1:24-cv-10926-AK<br><br>**HAMROCK REAL ESTATE PARTNERS, L.P. AND HAMCASTLE US, L.P.'S AMENDED COMPLAINT** |

Plaintiffs Hamrock Real Estate Partners, L.P. ("**HGP**") and HamCastle US, L.P. ("**Hamcastle**," collectively "**Plaintiffs**") hereby file the following Amended Complaint against Defendant Daniel M. Palmier ("**Defendant**" or "**Guarantor**") and allege as follows:

**NATURE OF THE ACTION**

This action arises out of Defendant's failure to pay over $9 million due and owing to Plaintiffs. Plaintiffs invested millions of dollars into a partnership with one of Defendant's companies. In exchange for that investment, Defendant irrevocably guaranteed the timely payment of amounts necessary for HGP to achieve its full Investment Yield (as defined below) and all accrued and unpaid asset management fees Hamcastle is entitled to under the applicable partnership agreement. The deadline for Defendant to make these payments to Plaintiffs has expired, and Defendant's default remains uncured. Accordingly, through this action, Plaintiffs seek to recover the amounts owed to them by Defendant.

**PARTIES**

1.      Plaintiff HGP is a limited partnership organized under the laws of Georgia. HGP's general partner is Hamcastle, LLC. The sole member of Hamcastle, LLC is a natural person who is a

citizen of Germany. HGP's limited partners are natural persons who are citizens of Germany as well as a trust, the trustees and beneficiaries of which are also natural persons who are citizens of Germany.

2. Plaintiff Hamcastle is a limited partnership organized under the laws of Georgia. Hamcastle's general partner is Hamcastle, LLC. The sole member of Hamcastle, LLC is a natural person who is a citizen of Germany. Hamcastle's limited partner is a natural person who is a citizen of Germany.

3. Defendant is a citizen of Florida. Defendant is the Founder and CEO of UC Funding, LLC ("**UC Funding**"), a company that invests in real estate funding. UC Funding maintains its headquarters in Boston, Massachusetts and is the primary obligor of the contract obligation that Defendant guaranteed.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between Plaintiffs, who are citizens of Germany, and Defendant, who is a citizen of Florida, and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Defendant because, under the parties' governing agreement, Defendant "irrevocably and unconditionally" agreed that any dispute arising in connection with the agreement "shall be resolved in . . . any Federal Court sitting in the District of Massachusetts" and thus "submit[ted] himself and his property to the jurisdiction of that court."

6. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because, under the relevant agreement, Defendant "consent[ed] that any action or proceeding may be brought in [any Federal Court sitting in the District of Massachusetts] and waive[d] any objection . . . to the venue of any such action or proceeding."

**FACTUAL BACKGROUND**

**A.      Partnership Agreement and Original Guaranty**

7.      On April 1, 2016 (the "**Effective Date**"), Plaintiffs and CPR Money LLC (the "**General Partner**")[1] entered into the Agreement of Limited Partnership of CPR/Hamrock JV, LP (as subsequently amended or restated, the **"Partnership Agreement"** or **"Agreement"**), a true and correct copy of which is attached hereto as **Exhibit A**.[2]

8.      The purpose of the Partnership Agreement was to form a partnership under the name of CPR/Hamrock JV, LP (the "**Partnership**") to own a preferred equity interest in Gainesville Ridge, LLC (the "**Initial Project Owner**"), which is the owner of land and improvements commonly referred to as The Ridge at Gainesville Apartments, 3718 SW 24th Avenue, Gainesville, Florida.

9.      As set forth in Section 1.04 of the Partnership Agreement, the purpose of the Partnership was to also acquire, own, manage, operate, sell, and otherwise deal with and dispose of additional real property located in the United States and in which Plaintiffs and the General Partner subsequently elected to cause the Partnership to acquire an ownership interest, directly or indirectly.

10.     Section 6.01(c) of the Partnership Agreement permitted the General Partner to acquire a direct or indirect interest in one or more additional Projects if certain criteria were met.

11.     Pursuant to the Partnership Agreement, Plaintiffs invested $2,800,000 into the Partnership and the General Partner invested $3,000,000 into the Partnership (the "**Initial Capital Contributions**").

---

[1] Following execution of the Partnership Agreement, CPR/Hamrock JV GP, LLC became the General Partner, as successor by assignment from UC Funding, as successor by assignment from CPR Money LLC.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Partnership Agreement.

3

12. In exchange for its investment into the Partnership, HGP was entitled to a return on its investment. As described in Section 5.02 of the Partnership Agreement, the General Partner was required to distribute certain amounts of Net Proceeds[3] necessary for HGP to achieve, taken together with monthly payments due to HGP pursuant to Section 5.01 of the Partnership Agreement ("**HGP Monthly Payments**"), its full "**Investment Yield**," as defined in the Partnership Agreement.

13. As an inducement to HGP to enter into the Partnership Agreement, Guarantor executed and delivered a payment Guaranty in favor of HGP dated as of April 1, 2016 (the "**Original Guaranty**"). Per the Original Guaranty, Guarantor "absolutely, unconditionally, and irrevocably guarantee[d]" to HGP the "payment of a cumulative annual return of ten percent (10%) on [HGP's] Initial Capital Contribution (as defined in the Partnership Agreement)" for a period of time specified in Section 2(a) of the Original Guaranty.

**B.    The Amendments to the Partnership Agreement and Original Guaranty**

14. Following execution of the Partnership Agreement, Plaintiffs and the General Partner amended the Partnership Agreement six times.

15. On January 20, 2017 (the "**First Amendment Date**"), Plaintiffs and UC Funding, as successor General Partner by assignment from CPR Money LLC, executed the First Amendment to the Partnership Agreement (the "**First Amendment**"). As of the First Amendment Date, the Partnership's preferred equity interest in the Initial Project Owner had been fully redeemed, and pursuant to Section 6.01(c) of the Partnership Agreement, the General Partner desired to acquire an interest in another real estate Project located in Clemson, South Carolina (the "**Clemson Project**").

---

[3] The Partnership Agreement defines "Net Proceeds" as "net proceeds of a Capital Transaction or a liquidation event of the Partnership after payment of (i) the debts and liabilities of the Partnership to the extent paid or satisfied in connection with such transaction, (ii) the payment of any and all costs and expenses incurred in connection with the transaction, including, without limitation, commissions, and (iii) reserves established from time to time in such amounts and for such purposes."

4

16.     Pursuant to the First Amendment, the Partners agreed that (a) HGP would purchase additional interests in the Partnership from the General Partner, (b) General Partner would make an additional Capital Contribution to the Partnership in the amount of $700,000 (the "**First Additional GP Contribution**"), and (c) the Partnership would (i) retain the Initial Capital Contributions for purposes of investing in the Clemson Project, and (ii) distribute certain preferred returns and exit fees to the Partners.

17.     Following execution of the First Amendment, the Partnership was unable to complete the investment in the Clemson Project. Accordingly, on March 24, 2017, Plaintiffs and CPR/Hamrock JV GP, LLC, as successor General Partner by assignment from UC Funding, as successor by assignment from CPR Money LLC, executed the Second Amendment to the Partnership Agreement (the "**Second Amendment**"), also effective as of January 20, 2017. Pursuant to the Second Amendment, Plaintiffs and the General Partner agreed that (a) the General Partner would fund an additional Capital Contribution to the Partnership in the amount of $1,900,000 (the "**Second Additional GP Contribution**") and (b) the Partnership would use the Initial Capital Contributions and the First Additional GP Contribution and the Second Additional GP Contribution to acquire an interest in a real estate Project located in Gulf Shores, Alabama (the "**Emerald Greens Project**").

18.     The Second Amendment also deleted Section 5.02 of the Partnership Agreement (Distribution of Net Proceeds) in its entirety and inserted new language with respect to how Net Proceeds must be distributed by the General Partner following the occurrence of a Dissolution Event (as defined in the Partnership Agreement) and completion of the winding up of the Partnership's affairs:

> 5.02. **Distribution of Net Proceeds.** The General Partner shall cause all Net Proceeds to be distributed promptly following the occurrence of a Dissolution Event and completion of the winding up of the Company's affairs in accordance with Section 10.02 hereof, in the following order and priority:
>
> (a) <u>First</u>, to HGP until HGP has received (taking into account all prior distributions pursuant to Section 5.01(a) and this Section 5.02(a)) an annual return on its average Net Capital Contribution Account balance during the period beginning on the Effective Date and ending upon the date of the Dissolution Event (including the return of its Capital Contributions) equal to 11% (the "***Investment Yield***"); and
>
> (b) <u>Thereafter</u>, to the General Partner."

19. The Second Amendment also required the Partnership to pay Hamcastle an asset management fee each time the Partnership acquired an interest in another real estate project. As described in Section 7 of the Second Amendment, Hamcastle (or its Affiliate) was entitled to "an annual asset management fee equal to one percent (1.00%) of the portion of HGP's average Net Capital Contributions Account balance that is being invested in such Project for the applicable year[.]"

20. In connection with and as an inducement to HGP to enter into the Second Amendment, Guarantor also executed and delivered an Amended and Restated Guaranty effective as of January 20, 2017 (the "**A&R Guaranty**"), which amended, restated, and superseded the Original Guaranty in full. Under the terms of the A&R Guaranty, Guarantor "absolutely, unconditionally, and irrevocably guarantee[d]" to HGP the "payment of its full Investment Yield."

21. After executing the Second Amendment, the Partnership completed its investment in the Emerald Greens Project. Specifically, the Partnership acquired, indirectly through 100 Emerald Greens, LLC ("**Project Owner**"),[4] certain condominiums located at 20050 Oak Road East, Gulf Shores, Alabama 36542 (the "**Emerald Greens Property**").

---

[4] Project Owner is a wholly owned subsidiary of 100 Emerald Greens Investor LLC ("**EG Holdings**"), which in turn is a wholly owned subsidiary of the Partnership.

6

22. On March 30, 2021, Plaintiffs and the General Partner executed the Third Amendment to the Partnership Agreement (the "**Third Amendment**") to memorialize the Partnership's acquisition of additional condominium units located at the Emerald Greens Property, as described in Exhibit B to the Third Amendment, and to modify the terms of the Partnership Agreement in certain other respects.

23. On October 25, 2021, the parties executed the Fourth Amendment to the Partnership Agreement (the "**Fourth Amendment**") to memorialize the Partnership's acquisition of additional condominium units located at the Emerald Greens Property, as described in Exhibit C to the Fourth Amendment, and to modify the terms of the Partnership Agreement in certain other respects.

24. As relevant here, the parties agreed that the General Partner would pay the Investment Yield to HGP and any accrued and unpaid asset management to Hamcastle on or before December 31, 2022 (the "**Redemption Date**"). Specifically, Section 2.a of the Fourth Amendment stated that the "General Partner shall, on or before December 31, 2022, cause the Partnership to redeem" Plaintiffs' interests by "(a) payment to HGP of all amounts that would be payable to HGP pursuant to Section 5.02(a) of the Partnership Agreement had a Dissolution Event occurred on the date that the Partnership makes such payment," and "(b) payment to Hamcastle of all accrued and unpaid asset management fees to which Hamcastle is entitled through the Redemption Date."

25. In or around February 2022, the Project Owner refinanced the Emerald Greens Property with a $55,500,000 loan ("**Refinance Loan**") from Prime Finance Short Duration Holding Company VII, LLC ("**Refinance Lender**"). As a condition to the closing of the Refinance Loan, Refinance Lender required that the General Partner and Plaintiffs extend the Redemption Date from December 31, 2022 to March 31, 2027.

26. On February 9, 2022, Plaintiffs and the General Partner executed the Fifth Amendment to the Partnership Agreement (the "**Fifth Amendment**") to approve the Refinance Loan and memorialize the extension of the Redemption Date from December 31, 2022 to March 31, 2027.

27. Notwithstanding the terms of the Fifth Amendment, UC Funding, Defendant's real estate investment company, agreed by separate letter agreement dated February 9, 2022 (the "**2022 Letter Agreement**") that if the Emerald Greens Project had not generated sufficient revenue to redeem Plaintiffs' interests by payment to HGP in full of the Investment Yield (as defined in Section 5.02(a) of the Partnership Agreement) (the "**Redemption Obligation**"), then UC Funding would, on or before December 31, 2022, (i) secure funds from a source other than the Emerald Greens Project in an amount sufficient to satisfy the Redemption Obligation (the "**Redemption Funds**"), (ii) contribute the Redemption Funds to the General Partner, (iii) cause the General Partner to contribute the Redemption Funds to the Partnership, and (iv) cause the Partnership to satisfy the Redemption Obligation. A true and correct copy of the 2022 Letter Agreement is attached hereto as **Exhibit B**.

28. UC Funding failed to cause the Partnership to satisfy the Redemption Obligation on or before December 31, 2022, as required under the 2022 Letter Agreement.

29. By letter agreement dated January 1, 2023 (the "**2023 Letter Agreement**"), Plaintiffs agreed to extend the date by which UC Funding was obligated to cause the Partnership to satisfy the Redemption Obligation from December 31, 2022 to December 31, 2023, provided that Plaintiffs and the General Partner entered into a Sixth Amendment to the Partnership Agreement also dated as of January 1, 2023 (the "**Sixth Amendment**") to increase the Investment Yield from 11% to 14.75%. A true and correct copy of the 2023 Letter Agreement is attached hereto as **Exhibit C**.

30. The Sixth Amendment, as approved by the General Partner, memorialized the increase to the Investment Yield by amending and restating Section 5.02(a) of the Partnership Agreement in its

entirety and adding a new definition of "Yield Percentage" to Schedule B of the Partnership Agreement.

> (a) Section 5.02(a) of the Partnership is hereby amended and restated in its entirety as follows:
>
> "(a) *First*, to HGP until HGP has received (taking into account all prior distributions pursuant to Section 5.01(a) and this Section 5.02(a)) an amount equal to the sum of (i) HGP's then outstanding Net Capital Contribution Account balance, and (ii) an annual return on the amounts described in clause (i) hereof for the period beginning on the Effective Date and ending upon the date of the Dissolution Event equal to the Yield Percentage (the "*Investment Yield*"); and"

> (c) The following definitions are hereby added to Schedule B of the Partnership Agreement:
>
> ""*Yield Percentage*" means, initially, fourteen and three-quarters percent (14.75%); provided, that, if the Board of Governors of the Federal Reserve System issues any increases of the short term federal funds rate at any time after February 2, 2023 but prior to the Dissolution Event, then the Yield Percentage will be increased by an equal amount."

Thus, under the plain terms of the 2023 Letter Agreement and the Sixth Amendment, Plaintiffs, Defendant, UC Funding, and the General Partner agreed that the Investment Yield equals the annual return on "an amount equal to the sum of [] HGP's then outstanding Net Capital Contribution Account balance . . . for the period beginning on the Effective Date [April 1, 2016] and ending upon the date of the Dissolution Event equal to the Yield Percentage [14.75%]."

C.    **The Second Amended and Restated Guaranty**

31.    As an inducement to Plaintiffs to enter into the Sixth Amendment and the 2023 Letter Agreement, Defendant executed and delivered a Second Amended and Restated Payment Guaranty (the "**Second A&R Guaranty**"), which amended, restated, and superseded the A&R Guaranty in full. A true and correct copy of the Second A&R Guaranty is attached hereto as **Exhibit D**.

32.    Under Section 2(a) of the Second A&R Guaranty, Defendant "absolutely, unconditionally and irrevocably guarantee[d] to [HGP], for the benefit of [HGP] and its successors and

9

assigns, the payment of the Investment Yield and satisfaction of the Redemption Obligation by the General Partner, the Partnership, and/or UC Funding on or before December 31, 2023" (the "**Obligations**"). The Redemption Obligation is defined in the Second A&R Guaranty as "the redemption obligations of the General Partner and the Partnership pursuant to Section 2 of the Fourth Amendment, as modified by the Fifth Amendment," which include both payment of the Investment Yield to HGP and payment of the accrued asset management fees to Hamcastle.

33. Under Section 2(b) of the Second A&R Guaranty, Defendant agreed that in the event that there shall be any breach or default of the Obligations, within five business days following notice of such breach or default, Defendant shall (a) "pay to [HGP] any and all such amounts required to eliminate any such breach or default," (b) indemnify, defend, and hold harmless HGP from costs, expenses, and liabilities HGP suffers by reason of such breach or default, and (c) reimburse HGP for any and all sums paid in connection with the curing of such breach or default or the enforcement of Defendant's obligations, "including reasonable attorneys' fees and disbursements."

34. Pursuant to Section 2(c) of the Second A&R Guaranty, Defendant further agreed to "pay any and all expenses (including all fees and disbursements of counsel) which may be reasonably paid or incurred by [HGP] after the occurrence of a breach or default of the Obligations with respect to enforcing any rights with respect to the Obligations or collecting against the Guarantor under this Guaranty."

35. Section 2(d) of the Second A&R Guaranty provides that no payments made by anyone other than Defendant or received or collected by HGP from Defendant, any other guarantor, or any other person "by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of or in payment of the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of the Guarantor hereunder except to the extent that

such payment is properly applied to the Obligations." As noted in Section 2(d), "Guarantor shall remain liable for the Obligations until the Obligations have been indefeasibly satisfied and discharged in full by their respective obligors."

36. Section 5(a) of the Second A&R Guaranty, titled "Guaranty Absolute and Unconditional," provides "that neither [HGP's] rights nor the Guarantor's obligations under this Guaranty shall be released, diminished, impaired, reduced or affected by any events, actions or circumstances other than the complete satisfaction and discharge in full of the Obligations by the obligors thereto." Rather, the Second A&R Guaranty is "a continuing, absolute and unconditional guaranty of performance and payment without regard to any defense, set-off or counterclaim which may at any time be available to or be asserted by the Guarantor against [HGP] or any other circumstance whatsoever . . . which constitutes, or might be construed to constitute, an equitable or legal discharge of the Guarantor under this Guaranty, in bankruptcy or in any other instance."

37. Under Section 5(b) of the Second A&R Guaranty, Defendant waived "to the fullest extent permitted by applicable law . . . any and all other rights and defenses available to the Guarantor[.]"

D.   **Demand and Notice of Default Under Second A&R Guaranty**

38. On December 31, 2023, the deadline for fulfillment of the Redemption Obligation expired and UC Funding defaulted on the Redemption Obligation.

39. On January 19, 2024, HGP demanded that Defendant satisfy the Redemption Obligation pursuant to Section 2(b) of the Second A&R Guaranty by paying in full amounts due to Plaintiffs within five business days, including $9,042,352.57 in Investment Yield due to HGP and $76,500.00 in accrued asset management fees due to Hamcastle (the "**Redemption Payment**").

11

40. Notwithstanding such demand, Defendant failed to pay the Redemption Payment. Accordingly, on February 21, 2024, Plaintiffs provided notice to Defendant of his default pursuant to Section 2(b) of the Second A&R Guaranty and demanded payment in full of the Redemption Payment on or before February 23, 2024.

41. Defendant has failed to pay the Redemption Payment as required under the Second A&R Guaranty, or otherwise cure his ongoing default. As of March 21, 2024, Defendant owes the Plaintiffs $8,984,977.57[5] of unpaid Investment Yield and $76,500 in unpaid asset management fees pursuant to the terms of the Second A&R Guaranty.

## COUNT I: BREACH OF CONTRACT

42. Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully herein.

43. The Second A&R Guaranty between HGP and Defendant is a valid and enforceable contract.

44. HGP has performed all of its obligations under the Second A&R Guaranty.

45. Defendant materially breached his obligations under the Second A&R Guaranty by failing to pay Plaintiffs the Redemption Obligation.

46. As a direct and proximate result of Defendant's material breach of the Second A&R Guaranty, Plaintiffs have incurred and will continue to incur actual damages in an amount which exceeds the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery from Guarantor. Related interest and expenses, including recoverable attorneys' fees, have accrued since the breach and continue to accrue.

---

[5] Since the February 21 default notice was issued UC Funding has remitted one HGP Monthly Payment due under the Partnership Agreement but the balance of the Redemption Payment remains due in full.

## COUNT II: UNJUST ENRICHMENT

47. Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully herein.

48. In the alternative to the breach of contract claim, Defendant was unjustly enriched by Plaintiffs' investment of millions of dollars into the Partnership, which has led to the impoverishment of Plaintiffs.

49. Plaintiffs' investment was a benefit conferred upon Defendant and his companies, which he appreciated and of which he had knowledge.

50. Defendant's enrichment and retention of the benefit under the circumstances without repayment of its value is inequitable and without justification, as Defendant and his companies promised to pay Plaintiffs the Redemption Obligation in exchange for their investment, which he has failed to do.

51. As a result, Defendant has been enriched and Plaintiffs have incurred and will continue to incur actual damages in an amount which exceeds the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery from Guarantor. Related interest and expenses, including recoverable attorneys' fees, have accrued since Defendant's unjust enrichment and continue to accrue. Plaintiffs have no remedy provided by law.

52. Defendant's conduct has exhibited a wanton or willful disregard for the rights of Plaintiffs, such that Plaintiffs are also entitled to an award of punitive damages.

## COUNT III: DECLARATORY RELIEF

53. Plaintiffs incorporates the preceding paragraphs by reference as if set forth fully herein.

54. Under the Declaratory Judgment Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

55. Under the Second A&R Guaranty, Plaintiffs assert that Defendant owes them the Redemption Obligation and thus breached the Second A&R Guaranty by failing to pay the Redemption Obligation. Defendant disputes whether he owes Plaintiffs the Redemption Obligation and thus whether he breached the Second A&R Guaranty.

56. Accordingly, an actual controversy exists between Plaintiffs and Defendant as to whether Defendant owes Plaintiffs the Redemption Obligation and thus whether he breached the Second A&R Guaranty by failing to pay them the Redemption Obligation.

57. Plaintiffs are entitled to a declaration that Defendant owes them the Redemption Obligation under the Second A&R Guaranty and thus that he breached the Second A&R Guaranty by failing to pay them the Redemption Obligation.

## COUNT IV: ATTORNEYS' FEES

58. Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully herein.

59. Under Section 2(c) of the Second A&R Guaranty, Defendant agreed to "pay any and all expenses (including all fees and disbursements of counsel) which may be reasonably paid or incurred by [HGP] after the occurrence of a breach or default of the Obligations with respect to enforcing any rights with respect to the Obligations or collecting against the Guarantor under this Guaranty."

60. In addition, under Delaware law, which governs the parties' dispute regarding the Second A&R Guaranty, the Court may award attorneys' fees when a party has conducted the litigation process in bad faith, thereby unjustifiably increasing the costs of litigation. Defendant has acted in such bad faith by asserting unmeritorious defenses to draw out the filing and resolution of this litigation, thereby unjustifiably increasing the costs of litigation.

61. Accordingly, Plaintiffs are entitled to recover the costs of this action, including their reasonable attorneys' fees and expenses.

## JURY DEMAND

62. Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully herein.

63. Plaintiffs hereby demand a trial by jury with respect to all claims for which they are so entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. That Plaintiffs be granted judgment against Defendant in the total amount of all damages suffered as a result of Defendant's acts, including pre-judgment and post-judgment interest;

B. That Defendant be ordered to make restitution for the amount of money he has improperly received, including pre-judgment and post-judgment interest;

C. That Plaintiffs be awarded punitive damages against Defendant;

D. That Plaintiffs be granted a declaration that Defendant owes them the Redemption Obligation under the Second A&R Guaranty and thus that he breached the Second A&R Guaranty by failing to pay them the Redemption Obligation;

E. That Plaintiffs be granted judgment against Defendant for all expenses of this action, including their reasonable attorneys' fees and costs; and

F. That this Court grant Plaintiffs such other and further relief as it considers just and equitable under the circumstances.

Dated: July 8, 2024                                   Respectfully submitted,

/s/ *Allen N. David*
Allen N. David, BBO #115000
Michael P. Duffy, BBO #137325
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, Massachusetts 02210
adavid@peabodyarnold.com
mduffy@peabodyarnold.com
(617) 951-2100

Blake M. Simon (*pro hac vice* forthcoming)
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
blake.simon@alston.com
(404) 881-7000

*Counsel for Plaintiffs Hamrock Real Estate Partners, L.P. and HamCastle US, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2024, I electronically filed the foregoing document using the Court's CM/ECF system, which will automatically send notification of such filing to all counsel of record.

*/s/ Allen N. David*
Allen N. David, BBO #115000
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, Massachusetts 02210
adavid@peabodyarnold.com
(617) 951-2100
